[No. D048658. Fourth Dist., Div. One. Mar. 26, 2007.]

FELICIA MARCEY, Plaintiff and Appellant, v.
BRENDA ROMERO, Defendant and Respondent.

**COUNSEL**

Law Offices of Thomas F. Friedberg, Thomas F. Friedberg; Law Office of Robert L. Kenny and Robert L. Kenny for Plaintiff and Appellant.

Farmer Case & Fedor and Nicholas J. Pagnotta for Defendant and Respondent.

**OPINION**

**McDONALD, J.**—Plaintiff Felicia Marcey recovered a judgment against defendant Brenda Romero and, as part of her cost bill, sought expert witness fees under Code of Civil Procedure section 998, subdivision (d).[1] The court granted Romero's motion to tax the expert witness fees, and Marcey appeals that order.

I

FACTUAL AND PROCEDURAL BACKGROUND

Marcey filed a personal injury action against Romero. Marcey made a series of section 998 offers to Romero, with each offer becoming progressively lower. On January 19, 2006, approximately one month before the trial call, Marcey made her final section 998 offer, which offered to accept a judgment of $3,999.99. However, Marcey's counsel orally informed Romero's counsel this offer was premised on Marcey's avoiding (1) the costs associated with deposing Romero's experts and (2) paying Marcey's experts to prepare for and appear at trial. Romero responded she was not interested in paying that

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

amount without knowing the testimony of Marcey's expert. Marcey then deposed Romero's experts and prepared for trial.

On February 17, 2005, Romero's counsel telephoned Marcey's counsel and attempted orally to accept the January 19th offer. Marcey's counsel rejected the attempted oral acceptance, orally withdrew the offer, and immediately faxed a written "Notice of Withdrawal" to Romero's counsel. Trial commenced on February 22, 2005. Marcey recovered a judgment against Romero for $1551.

Marcey's cost bill included expert witness fees under section 998, subdivision (d). Romero moved to tax these costs, asserting Marcey's withdrawal of the January 19th offer before it statutorily expired made that offer a nullity. Marcey opposed the motion, asserting that she was entitled to withdraw the offer at any time before it was validly accepted but nevertheless treat the withdrawn offer as an unaccepted offer for purposes of the cost-shifting provisions of section 998.[2]

The court granted Romero's motion and denied Marcey's request for expert witness fees. Marcey timely appealed.

II

ANALYSIS

A. *Statutory Scheme*

■ Section 998, which reflects this state's policy of encouraging settlements (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270 [276 Cal.Rptr. 321, 801 P.2d 1072]), creates a financial incentive to encourage the parties to make and accept reasonable settlement offers. (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 726–727 [15 Cal.Rptr.3d 829].) Section

---

[2] Although Marcey's January 19th offer was for $3,999 and the jury's *award* was for $1551, Marcey argued that the ultimate *judgment* was nevertheless more favorable than her offer because she was entitled to amalgamate the verdict plus recoverable costs (of approximately $3700) and, as amalgamated, the judgment exceeded her section 998 offer. (See, e.g., *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382 [85 Cal.Rptr.2d 4]; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658 [73 Cal.Rptr.2d 242].) We need not decide whether the language of Marcey's January 19th offer would permit her to add recoverable costs before comparing the judgment to the offer (see, e.g., *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256 [155 Cal.Rptr. 516]; *Lanyi v. Goldblum* (1986) 177 Cal.App.3d 181 [223 Cal.Rptr. 32]; *Ritzenthaler v. Fireside Thrift Co.* (2001) 93 Cal.App.4th 986 [113 Cal.Rptr.2d 579]; *Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261 [118 Cal.Rptr.2d 276]) because we conclude below that a section 998 offer unilaterally revoked by the offeror within the statutory time limits is a nullity for purposes of the cost-shifting provisions of section 998.

998, subdivision (b) implements this purpose by providing, in part, that "[n]ot less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken . . . in accordance with the terms and conditions stated at that time. . . . [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . . [¶] (2) If the offer is not accepted prior to trial . . . or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence . . . ." When a plaintiff makes an offer of settlement that complies with section 998 and it is not accepted by the defendant within the statutory timeframes, and the defendant does not obtain a more favorable judgment than was contained in the offer, the court has discretion to require the defendant to pay plaintiff's postoffer costs for the services of expert witnesses. (§ 998, subd. (d).) Thus, the incentive provided to the offeror (the enhanced cost recovery) encourages the offeror to make reasonable settlement offers, and the incentive to the offeree (the prospect of paying the enhanced cost recovery) encourages the offeree to timely evaluate and accept reasonable settlement offers. (*Berg*, at p. 727.)

We should apply section 998 "in a manner which best promotes its purpose." (*Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1375 [84 Cal.Rptr.2d 581].) However, "the statutory language is silent on a number of issues relevant to the application of the provision," including "whether a statutory offer may be revoked by the offeror before the statutorily designated period expires" (*ibid.*), and what effect a revoked offer has on the application of section 998's cost-shifting provisions. Although the former question was judicially resolved in *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273 [204 Cal.Rptr. 143, 682 P.2d 338], the latter question has not definitively been resolved and is presented in this case.

B. *A Revoked Offer Does Not Trigger the Cost-shifting Provisions of Section 998*

In *T. M. Cobb*, the plaintiff made a section 998 offer but, when additional discovery during the 30-day period revealed the defendant was more culpable, the plaintiff issued a written revocation of the offer prior to the end of the statutory period. However, the defendant (after receiving the revocation and apparently still within the statutory period) nevertheless filed a purported acceptance of the offer. (*T. M. Cobb Co. v. Superior Court, supra*, 36 Cal.3d at p. 276.) The trial court denied the defendant's motion to enter judgment on the accepted offer (*id.* at p. 277), and the Supreme Court affirmed. The court reasoned that because the settlement and compromise process embodied in section 998 involves contractual elements, the courts may resort to general contract principles to interpret the gaps in the statutory language as long as

those principles "neither conflict with the statute nor defeat its purpose." (*T. M. Cobb*, at pp. 279–280.) The court applied the general contract principle that an offer may be revoked by the offeror anytime prior to acceptance to reach the conclusion that an offer made pursuant to section 998 could be revoked prior to expiration of the statutory period as long as it had not yet been accepted. (*T. M. Cobb*, at p. 281.)

Although *T. M. Cobb* did not involve the effect of a revoked offer on section 998's cost-shifting provisions, the majority's response to one of the dissent's critiques of its holding foreshadows our approach to the issue. The dissent argued that permitting revocation would allow the offeror to obtain the cost benefits of section 998 without holding the offer open for the entire statutorily specified period. (*T. M. Cobb Co. v. Superior Court, supra*, 36 Cal.3d at p. 285 (dis. opn. of Broussard, J.).) The majority dismissed that concern, stating "[t]he dissent argues that this holding, combined with the literal wording of the statute, will permit parties to make offers, revoke them, and nevertheless gain the cost benefits of the statute. [Citation.] However, that anomalous result can be avoided simply by giving the word 'offer' a sensible construction. It should be apparent that an offer that is revoked prior to acceptance no longer functions as an 'offer' for purposes of the cost benefit provisions." (*Id.* at p. 283, fn. 13.)

■ We agree with the *T. M. Cobb* court's observation that an offer revoked before the expiration of the period statutorily specified by section 998 forfeits its status as an "offer" under the remaining provisions of section 998. The statutory scheme requires an offeree, upon receipt of a section 998 offer, to make an election: he or she may accept the offer and thereby terminate the litigation, or let the offer lapse and risk the potential statutory penalties of proceeding with the litigation. Moreover, the statute appears to contemplate the offeree has a statutorily prescribed window of opportunity within which to weigh the consequences and make an election: the offeree must elect the former option within 30 days or (if less than 30 days remain before trial) prior to the start of trial, after which that opportunity expires, the offer is "deemed withdrawn" and the offeree becomes exposed to the potential consequences. (§ 998, subd. (b)(2).) However, when the offeror unilaterally revokes the offer, the offeror deprives the offeree of the principal benefit and protection afforded to the offeree by the statute, e.g., the legislatively prescribed period to weigh the risks and select between the two options. We do not believe an offeror should be entitled to reap the full benefits afforded by the statute after diminishing the benefits afforded to the offeree by the statute.

■ Marcey, noting an offeror has the right to seek costs when an offer is *deemed* withdrawn (by lapse of the prescribed period), asserts there is nothing

in the statute that suggests we should treat differently an offer *unilaterally* withdrawn by the offeror's revocation. However, section 998 defines a prescribed period within which an offeree must act on an offer or risk the adverse consequences described by the remaining subdivisions of section 998, after which the law will deem the offer withdrawn and the adverse consequences will attach. We are not persuaded by Marcey's argument that we should interpret section 998 to permit the offeror to shorten the legislatively prescribed period by unilaterally reducing the deadline that carries the legislatively prescribed consequences for unaccepted section 998 offers.

## DISPOSITION

The judgment is affirmed. Romero is entitled to costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.