Filed 1/23/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JANET LINTON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF CONTRA COSTA et al.,<br><br>        Defendants and Respondents. | A153188<br><br>(Contra Costa County<br>Super. Ct. No. C14-00403) |

Plaintiff Janet Linton appeals from an order denying her request for attorney fees. Linton contends defendants County of Contra Costa (County), Greater Richmond Inter-Faith Program, and Dennis Jauregui's (jointly, defendants) acceptance of her offer to compromise under Code of Civil Procedure section 998 (section 998) entitled her to fees because it expressly provided for "attorney's fees allowed by law as determined by the court." While Linton's section 998 offer provided her the right to seek attorney fees as "allowed by law," we conclude no such fees were in fact "allowed by law." Accordingly, we affirm the judgment.

## I. BACKGROUND

Linton fell from her wheelchair while being transported in a County paratransit van. The transporter had anchored Linton's wheelchair to the floor but had not provided Linton with a seatbelt. Linton sustained various injuries as a result of the incident.

Linton's second amended complaint alleged violations of the California Disabled Persons Act (Civ. Code, § 54 et seq.; DPA) and the Unruh Civil Rights Act (Civ. Code,

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.A.

§ 51 et seq.; Unruh Act).  Linton sought general damages, medical and related expenses, interest, costs of suit, and statutory attorney fees.  She did not seek injunctive relief.  The parties made multiple attempts to settle the litigation and exchanged various settlement offers.  However, those settlement attempts failed because defendants insisted on a global settlement amount whereas Linton's counsel demanded a settlement amount for damages and a separate right to seek attorney fees.  After multiple years of litigation, Linton made a section 998 offer, which provided for judgment in the amount of $250,001, "Plus costs under Code of Civil Procedure section 1032 and attorney's fees allowed by law as determined by the court."  Defendants subsequently accepted Linton's offer.

The trial court entered judgment pursuant to the accepted section 998 offer, and Linton filed a motion for attorney fees.  Defendants opposed the fee motion.  In their opposition, defendants argued, in part, Linton was not entitled to attorney fees because both the DPA and Unruh Act require a finding of liability, and the section 998 offer did not include such a finding.

Following a hearing on the motion, the trial court denied Linton's request for attorney fees.  The trial court concluded Linton was only entitled to recover fees under the Unruh Act or DPA if "there has been a 'finding that the defendant has denied the plaintiff rights guaranteed by [those provisions].' "  The court held the provision for attorney fees in the section 998 offer "d[id] not constitute the requisite finding of liability," and it could not make such a finding " 'because a compromise settlement operates as a bar to reopening the controversy.' "  It also rejected Linton's argument she was entitled to attorney fees under a private attorney general theory.  Linton timely appealed.

## II.  DISCUSSION

### A.  *Failure to Provide Adequate Record of Appropriate Citations*

Defendants argue the judgment should be affirmed because Linton failed to provide an adequate record or citations in support of her brief.  Specifically, they contend (1) the appendix is neither chronological nor alphabetical; (2) the appendix omits various documents necessary for proper consideration of the issues; and (3) the appendix includes

2

irrelevant material, material not filed with the superior court, and a reporter's transcript.[1] They also assert Linton's failure to provide adequate citations throughout her brief should waive any claimed error on appeal.

While the appendix is not properly formatted, it appears there is no actual dispute regarding the underlying facts and the size of the appendix makes its erroneous formatting annoying rather than prejudicial. Likewise, Linton filed a second appendix with her reply brief, which included in part a register of actions, the notice of appeal, and the notice designating record on appeal. While Linton should have included these materials in her initial appendix, defendants do not identify any resulting harm as a result of their belated submission. Likewise, defendants do not identify any resulting harm from the inclusion of irrelevant material and a transcript (which was also transmitted as a reporter's transcript to this court).[2]

The inclusion of material beyond the scope of the trial court's file, however, is problematic. "An appellant's appendix may only include copies of documents that are contained in the superior court file." (*The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 404 [striking noncompliant exhibits]; *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 ["an appellate court will consider only matters which were part of the record at the time the judgment was entered"]; *C.J.A. Corp. v. Trans-Action Financial Corp.* (2001) 86 Cal.App.4th 664, 673 [granting motion to strike portions of brief that referred to evidence that was not part of the record].) Linton argues defendants' section 998 offer, for example, was included at the suggestion of the trial court. But if that section 998 offer was relevant to Linton's position, she should have presented such evidence to the trial court as part of her briefing. Then those materials could properly be included in the appendix. As explained by our Supreme Court in *In re Zeth S.* (2003)

---

[1] Defendants also contend (1) the appendix is not Bates-stamped or numbered consecutively, and (2) the appendix cover does not state the inclusive page numbers of the volume. We note, however, the appendices received by this court do contain consecutively numbered Bates-stamped pages.

[2] To the extent such materials are included in the appellant's appendix, we disregard them.

31 Cal.4th 396, 405: "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly.' " Linton offers no justification for why this court should consider new evidence at this stage. Accordingly, we strike (1) appellant's appendix, volume 1, pages 29 to 34 and 181 to 194; and (2) appellant's appendix, volume 2, pages 3 to 5.

Finally, we decline to summarily reject the appeal because of inadequate citations to the record. The trial court's judgment is presumed to be correct, and Linton has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.) Any deficiency in her evidentiary showing will be addressed in connection with the merits. (See *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 ["Failure to provide an adequate record on an issue requires that the issue be resolved against appellant."].)

**B.** *Entitlement to Attorney Fees*

Linton raises two arguments for why she is entitled to recover attorney fees. First, Linton contends she was the prevailing party, which entitled her to recover attorney fees under Code of Civil Procedure section 1032. Second, Linton asserts extrinsic evidence demonstrates she believed the section 998 offer would entitle her to recover attorney fees. She claims the section 998 offer should be interpreted accordingly based on principles of contract interpretation. We address each argument in turn.

## 1. Whether the Section 998 Offer Provided a Statutory Right to Attorney Fees

Linton contends section 998, and its incorporation of Code of Civil Procedure section 1032, provides her with a statutory right to attorney fees because she was the prevailing party. She argues the trial court erroneously relied on *Doran v. North State Grocery, Inc.* (2006) 137 Cal.App.4th 484 (*Doran*) to conclude otherwise. She asserts *Doran* was factually inapposite and applied an erroneous statement of the law. We disagree.

Indisputably, a section 998 offer that is silent as to attorney fees cannot reasonably be interpreted as excluding such recovery to the prevailing party, provided attorney fees are authorized by statute or contract. (*Wohlgemuth v. Caterpillar, Inc.* (2012) 207 Cal.App.4th 1252, 1259.) Linton cites and discusses a number of cases articulating this position.[3] Linton argues these cases demonstrate a prevailing party is entitled to costs unless explicitly excluded. But costs do not always equate to attorney fees. Under

---

[3] (See *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1154 ["The cases make clear that if a settlement agreement, compromise offer pursuant to section 998, or stipulated judgment is silent on the matter of costs, the plaintiff is not barred from seeking costs."]; *Engle v. Copenbarger & Copenbarger* (2007) 157 Cal.App.4th 165, 170 ["If [defendant] wanted a fee waiver, it should have put one in the offer. Since the offer was silent on fees, it did not bar a later fee motion."]; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 679 ["absent affirmative agreement of the parties to the contrary, the trial court retains jurisdiction after the filing of a compromise agreement to entertain a cost bill"]; *Ritzenthaler v. Fireside Thrift Co.* (2001) 93 Cal.App.4th 986, 991 ["A compromise agreement that expressly settles 'all damages and injunctive claims,' but nothing more, cannot reasonably be interpreted as including a settlement of the plaintiffs' right to recover attorney fees under Civil Code section 1717."]; *Lanyi v. Goldblum* (1986) 177 Cal.App.3d 181, 187 ["attorney fees authorized by [Civil Code] section 1717 are available to a party who prevails by a section 998 compromise settlement that is silent as to costs and fees"]; *On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1084 ["when a section 998 offer is silent about attorney's fees and costs, it cannot reasonably be interpreted to exclude their recovery and the prevailing party may seek them"]; *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 264 ["By its failure to draft with precision its compromise offer, defendant cannot now be heard to claim that its language precludes the award of costs."].)

the Code of Civil Procedure, general entitlement to attorney fees is governed by section 1032, which provides in part, "*Except as otherwise expressly provided by statute*, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b), italics added.) The litigation costs a prevailing party may recover include attorney fees *when recovery of such fees is authorized by contract, statute, or law*. (Code Civ. Proc., § 1033.5, subd. (a)(10).) Accordingly, a prevailing party is not automatically entitled to attorney fees merely by virtue of prevailing, but must demonstrate such an entitlement via contract, statute, or law.

In *Doran*, *supra*, 137 Cal.App.4th 484, the plaintiff sued the defendant supermarket for illegal "architectural barriers" preventing wheelchair accessibility. (*Id.* at p. 487.) The defendant made an offer to compromise pursuant to section 998, which was accepted by the plaintiff. (*Ibid.*) The section 998 offer agreed to a judgment in the plaintiff's favor in the amount of $10,000, but was silent as to the apportionment of attorney fees and any admission of liability by the defendant. (*Doran*, at p. 487.) The plaintiff subsequently argued he was entitled to attorney fees as the prevailing party, and the trial court awarded him fees. (*Id.* at pp. 487–488.) On appeal, the court analyzed the statutory language of the Unruh Act and its legislative history. (*Doran*, at pp. 490–491.) It noted Civil Code section 52, which sets forth the attorney fees provision for the Unruh Act, only "authorizes an award of attorney fees to a person 'denied the rights provided in Section 51, 51.5, or 51.6.' " (*Doran*, at p. 490.) The court thus concluded "the plain language makes clear that only those who deny rights guaranteed by section 51, 51.5, or 51.6 are liable for attorney fees." (*Id.* at p. 489.) In doing so, the court expressly rejected the plaintiff's argument that the general entitlement to attorney fees by the prevailing party under Code of Civil Procedure sections 1032 and 1033.5 should trump the language of Civil Code section 52. (*Doran*, at pp. 490–491.) Because the accepted offer to compromise was silent on whether the defendant had violated the Unruh Act, the award of attorney fees in favor of the plaintiff was reversed. (*Doran*, at pp. 491–493.)

Similar to the Unruh Act, the DPA states: "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for . . . attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2." (Civ. Code, § 54.3, subd. (a).) Accordingly, the DPA also requires a finding of liability before the statute allows for an attorney fee recovery.[4] Linton acknowledged as much before the trial court. Had the Legislature wished to impose attorney fees more broadly for DPA violations, they certainly knew how to do so. (See, e.g., Gov. Code, § 12965, subd. (b) [awarding attorney fees to prevailing party at the discretion of the trial court].)

Neither *Doran* nor the trial court here prohibited the prevailing party from seeking attorney fees following a section 998 settlement. In *Doran*, the prevailing party was entitled to file a fee motion because the section 998 offer was silent as to fees. Here, Linton was entitled to file a fee motion because the section 998 offer stated she was entitled to recover attorney fees "as allowed by law." In both instances, however, the courts correctly determined attorney fees were not recoverable under Code of Civil Procedure section 1033.5 because they were not authorized by the relevant statutory provision at issue. (Accord *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 951 [in denying prevailing defendant attorney fees under the California Fair Employment and Housing Act (Gov. Code., § 12900 et seq.), court concluded "section 998 does not grant greater rights to attorney's fees than those provided by the underlying statute"]; *Ford Motor Credit Co. v. Hunsberger* (2008) 163 Cal.App.4th 1526, 1532 ["Section 998 is a cost-shifting statute that allows for the recovery of costs, including attorney fees as costs if there is a contractual or other statutory basis for them. Stated differently, section 998 does *not* independently create a statutory right to attorney fees . . . ."].)

---

[4] An action that includes a claim for injunctive relief is treated differently. "The prevailing party [in such an action] *shall be* entitled to recover reasonable attorney's fees." (Civ. Code, § 55, italics added.)

Linton has not cited any authority to the contrary.  Nor has she cited authority suggesting either a settlement or a "prevailing party" designation gives rise to a presumption of liability.  In fact, assuming liability merely due to Linton's designation as "prevailing party" or defendants' acceptance of her offer to compromise would undermine the purpose of section 998, which is to encourage pretrial settlements.  (See *One Star, Inc. v. STAAR Surgical Co.* (2009) 179 Cal.App.4th 1082, 1090; accord Evid. Code, § 1152, subd. (a) [evidence of settlement offers or related conduct or statements "is inadmissible to prove his or her liability for the loss or damage or any part of it"]; *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888–889 [Evid. Code, § 1152 and § 998, subd. (b) operate to "bar the introduction into evidence of an offer to compromise a claim for the purpose of proving liability for that claim . . . ."].)  Offers to compromise may "have little or nothing to do with the underlying lawsuit." (*Hasler v. Howard* (2004) 120 Cal.App.4th 1023, 1026.)  In the absence of a valid contractual or statutory basis for awarding Linton attorney fees, such fees are not "allowed by law."  The trial court properly denied Linton's fee motion on that basis.

## 2. Whether the Section 998 Offer Provided a Contractual Right to Attorney Fees

Although the DPA does not authorize attorney fees without a finding of liability, attorney fees also may be authorized by contract.  (Code of Civ. Proc., § 1033.5, subd. (a)(10); accord *One Star, Inc. v. STAAR Surgical Co.*, *supra*, 179 Cal.App.4th at p. 1089 [§ 998 offer and acceptance process " ' "is a contractual one" ' "].)  Here, the offer to compromise stated:  "The judgment is to be . . . [¶] . . . in the amount of $250,001.00 [¶] . . . [¶] . . . Plus costs under Code of Civil Procedure section 1032 and attorney's fees allowed by law as determined by the court."  Linton does not contend the phrase "allowed by law" is ambiguous on its face.  Rather, she contends the section 998 offer must be interpreted based on Linton's intent and the surrounding circumstances.  Linton claims extrinsic evidence demonstrates all parties understood the section 998 offer to include an attorney fee award.

Defendants initially argue Linton waived this argument because she only raised it in her reply brief in the trial court.  When an appeal raises only questions of law, " ' "an appellate court can affirm or reverse the ruling on new grounds.  [Citations.]  After all, we review the validity of the ruling and not the reasons given." ' " (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1022.)  Where contract interpretation does not involve credibility determinations regarding extrinsic evidence, we apply de novo review on appeal.  (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266–1267.)  Accordingly, we will address the merits of Linton's contract argument because the extrinsic evidence is undisputed.

" 'In interpreting a section 998 offer, general contract principles apply when they neither conflict with nor defeat the statute's purpose of encouraging the settlement of lawsuits prior to trial.'  [Citation.]  '. . . [O]ur Supreme Court has held that the legislative purpose of section 998 is generally better served by "bright line rules" that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement.' " (*Timed Out LLC v. 13359 Corp.* (2018) 21 Cal.App.5th 933, 942–943.)

Courts first look to the plain meaning of the agreement's language.  (Civ. Code, §§ 1638, 1644.)  "An ambiguity may appear on the face of a contract, or extrinsic evidence may reveal a latent ambiguity." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114.)  If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, § 1649.)  This inquiry does not consider the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee.  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 802, fn. 9 [" 'Although the intent of the parties determines the meaning of the contract [citations], the relevant intent is 'objective'—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent.' "].)  If, after this second inquiry, the ambiguity remains, "the

9

language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.)

Linton alleges the phrase "attorney's fees allowed by law" is ambiguous because she believed her designation as the prevailing party would constitute a legal entitlement to attorney fees. This is not an ambiguity. "Ambiguity is defined as 'an unclear, indefinite, or equivocal word, expression, meaning, etc.' [Citation.] A word or expression is said to be ambiguous when it is 'open to having several possible meanings or interpretations.' " (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 117.) Linton does not claim the phrase "allowed by law" has alternative meanings. Rather, she asserts she mistakenly believed her attorney fees were "allowed by law" because she thought her designation as the prevailing party would equate to a finding of liability against defendants. For the reasons discussed in part II.B.1., *ante*, neither the settlement nor her designation as prevailing party amounts to a finding of liability. A mistaken understanding of the law does not support reformation of the agreement. (See *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 672 ["the clear purpose of section 998 . . . is to encourage the settlement of lawsuits prior to trial [citation]. If courts could set aside compromise agreements on the grounds of mistake, section 998 judgments would spawn separate, time-consuming litigation."].)

Even assuming the attorney fee provision is ambiguous, we cannot construe it in Linton's favor. The only admissible evidence Linton cites is a declaration from a defense attorney and the hearing transcript.[5] And neither of these clarifies the ambiguity. The declaration states Linton's counsel repeatedly demanded attorney fees separate and apart from a settlement amount for Linton. But Linton's counsel also made settlement demands of $1 million, a "final offer" of $450,000, and stated " 'this case can only be settled for $375,000 and not a penny less.' " Obviously, statements made during

---

[5] Linton also references her mandatory settlement conference statement and defendant's prior section 998 offer, neither of which are properly before this court. (See part II.A., *ante*.)

10

settlement negotiations are not reliable indicia of what terms would ultimately be acceptable, as evidenced by Linton's subsequent offer of $250,001. The declaration also indicates defense counsel repeatedly insisted on a global settlement, and stated the parties appeared to have been "close to resolution on a global number on several occasions." Nothing in the declaration indicates defense counsel knew the accepted section 998 offer was intended to award Linton her attorney fees, with merely the amount left uncertain. Likewise, Linton fails to produce any contemporaneous evidence regarding the section 998 offer, such as a transmittal e-mail or communications with opposing counsel describing its terms. And the lack of such evidence is fatal to Linton's position. The applicable standard is not Linton's intent, but what defendants objectively understood Linton's intent to have been. (See *Badie v. Bank of America*, *supra*, 67 Cal.App.4th at p. 802, fn. 9; *Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [as a matter of contract law, "the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial"].) And Linton offers no evidence on this point.

Nor does the hearing transcript convince us otherwise. Defense counsel stated in argument they "had no reason to believe that this wasn't intended to be a global settlement, because that's what we had been communicating to him all along." While defense counsel acknowledged he "saw a weakness in the case" if Linton's counsel wanted to subsequently argue over an attorney fee award, he emphasized recent mediation discussions involved a global settlement offer by defendants, and defendants "had no reason to believe one way or the other."

The evidence proffered by Linton does not clarify the objectively reasonable expectations of defendants upon receipt of her section 998 offer. Accordingly, we must interpret the section 998 offer against "the party who caused the uncertainty to exist"— i.e., Linton. (See Civ. Code, § 1654.)

Finally, we note the section 998 offer was presented on a form approved by the Judicial Council, Judicial Council form CIV-090. At oral argument, counsel for Linton contested for the first time the adequacy of form CIV-090. He noted the form omitted any box providing for a judgment to include attorney fees in an amount to be determined

11

by the court.[6]  Form CIV-090 allows an offer of judgment to be made in a specific monetary amount, and it provides five options regarding costs and attorney fees that the offering party can select by checking a box.  The first option allows the offering party to indicate the parties are to bear their own costs and fees.  The second option indicates the designated monetary amount of the judgment includes costs and attorney fees.  The third option only provides for costs in addition to the designated monetary amount of the judgment.  The fourth option allows the offering party to indicate the offer is for the designated monetary amount of the judgment plus a specific amount of costs and attorney fees.  And the fifth option—the one selected by Linton here—provides the offer is for the designated amount of the judgment plus costs and attorney fees "*allowed by law* as determined by the court."  (Italics added.)

No box explicitly provides for costs and attorney fees in an amount to be determined by the court.  In other words, the form includes *no* option that would have effectuated Linton's purported goal of offering a $250,001 judgment plus reasonable attorney fees, irrespective of a judicial determination of liability, without supplementing the form language.  A party bringing an action under a statute—such as the DPA or the Unruh Act—that requires a judicial determination of liability before that party may recover attorney fees should proceed with caution when using Judicial Council form CIV-090 to make a section 998 offer.

However, Linton could have supplemented the language of the form by checking box 2.b., which allows a party to insert whatever terms for the judgment he or she desires.  She also had the option of checking box 2.a.(4), and inserting "as determined by the court" in lieu of a specific fee amount.  Linton did not take advantage of either option, to her ultimate detriment.

---

[6] It is not our role to rewrite Judicial Council forms.  We provide these comments for the Judicial Council's consideration when it next assesses the utility of Judicial Council form CIV-090.

## III.  DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Margulies, J.

We concur:


_____

Humes, P. J.


_____

Banke, J.


A153188
*Linton v. County of Contra Costa*

14

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Steven K. Austin

Counsel:

Peter Kagel; Law Office of Jeffrey D. Kirk and Jeffrey D. Kirk for Plaintiff and Appellant.

Ericksen Arbuthnot, Gregory A. Mase and Andrew J. Kozlow for Defendant and Respondent County of Contra Costa.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Melissa R. Daugherty; Vogal Meredith Burke, E. Forrest Shryock, Jr.; Beach Cowdrey Owen and Thomas Beach for Defendants and Respondents Greater Richmond Inter-Faith Program and Dennis Jauregui.