[No. D042195. Fourth Dist., Div. One. June 8, 2004.]

ELITE SHOW SERVICES, INC., Plaintiff and Appellant, v. STAFFPRO, INC., et al., Defendants and Respondents.

[No. D042753. Fourth Dist., Div. One. June 8, 2004.]

ELITE SHOW SERVICES, INC., Plaintiff and Appellant, v. STAFFPRO, INC., Defendant and Respondent.

COUNSEL

Rutherford & Rybacki and Matthew R. Rutherford for Plaintiff and Appellant.

Gibbs, Giden, Locher & Turner, James M. Gansinger and Eric L. Troff for Defendants and Respondents.

OPINION

McINTYRE, J.—The question presented in this case is whether the inclusion of an agreement to pay reasonable attorney fees in a pretrial settlement offer renders the offer too uncertain to be enforced pursuant to Code of Civil Procedure section 998. (All further statutory references are to the Code of Civil Procedure.) We conclude that it does not and affirm the order of the trial court awarding certain expert witness fees and costs under that statute in favor of the offeror.

### FACTUAL AND PROCEDURAL BACKGROUND

Elite Show Services, Inc. (Elite) and Staffpro, Inc. are both event-staffing companies that provide licensed security guards and other staff for public and private events in San Diego. In May 2001, Elite brought this action against Staffpro, Inc., and Cory Meredith (collectively Staffpro) for unfair competition, unfair business practices and intentional interference with prospective economic advantage, alleging that Staffpro engaged in various wrongful acts (including the use of unlicensed personnel as guards, the use of compensation arrangements designed to avoid payroll taxes, and the failure to provide workers' compensation and disability insurance for employees who Staffpro provided as "group labor") to reduce its costs and allow it to provide services at artificially low prices.

In December 2001, Staffpro made a settlement offer pursuant to section 998, in which it offered to agree to the precise injunctive relief that Elite prayed for in its complaint, to wit, that it would (1) "not provide personnel to perform security guard functions to public and private customers when such personnel does not possess the mandatory state 'guard card' . . ." (2) "properly license and register all persons performing security guard work for which a license is required prior to their deployment as security guards, pursuant to California Business and Professions Code sections 7580 et seq.," (3) not "provide or offer to provide to private and public customers 'group' labor personnel who are not provided Workers' Compensation, State Disability and other required benefits and without withholding and paying appropriate state and federal income taxes on the earnings of said personnel," (4) "not

allow employees to direct traffic on San Diego City streets without proper traffic control certification," and (5) "not deploy security guards at San Diego Unified School District venues when such security guards do not possess a permanent California 'guard card' . . . ." In the provision that is the crux of the parties' current dispute, Staffpro also agreed to pay Elite "a sum equal to the amount of reasonable attorneys' fees and taxable costs that [Elite] has incurred in investigating and prosecuting this action to and including December 26, 2001, as it relates to [Staffpro's] alleged conduct sued upon herein." Elite did not accept the offer.

At the outset of trial in December 2002, Elite dismissed its intentional interference claim and withdrew its claim for monetary damages pursuant to its unfair business practice cause of action and the case proceeded to a bench trial on its request for injunctive relief. After a consideration of the parties' evidence and briefs, the court denied Elite's request for injunctive relief pursuant to the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), but issued an order requiring Staffpro (A) to either provide workers' compensation coverage to its group labor personnel or ensure that the nonprofit organizations who use such personnel provide such coverage; and (B) to utilize only licensed personnel for (1) restraining or limiting the movement of the general public which, if conduct escalated, would require the use of force or physical restraint, (2) patdowns requiring physical intrusion into the personal space of a member of the general public, and (3) car searches requiring physical intrusion into the personal space of a member of the general public. The court concluded that neither party prevailed at trial and ordered each party to bear its own costs and expenses.

Thereafter, Staffpro filed a motion for an award of expert witness fees pursuant to section 998, subdivision (c)(1) (section 998(c)(1)). The trial court rejected Elite's argument that the offer could not be enforced under section 998(c)(1) because the offer was too uncertain and not unconditional; it entered an order awarding Staffpro $22,125 in fees incurred for one of its defense experts. Later, Staffpro filed a memorandum of costs, seeking costs incurred for filings, depositions, service of process, witness fees, exhibits, court reporter fees and expert witness fees. Elite brought a motion to tax the cost memo, challenging the amounts requested for exhibits and expert witness fees. The court granted Elite's motion in part as to each of the challenged items and entered an order directing the clerk to interlineate a cost award of $53,648.90 in Staffpro's favor into the judgment. Elite appeals the court's cost orders, contending the offer was too uncertain to be enforceable and thus did not provide a basis for making an award under section 998.

## DISCUSSION

*Section 998*

As a general rule, a prevailing party in a civil action is entitled to recover its costs from its opponent. (§ 1032.)   However, section 998 establishes a procedure for shifting costs if the prevailing party obtains a judgment less favorable than a pretrial settlement offer made by the other party. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 798 [101 Cal.Rptr.2d 167] (*Barella*).) In that situation, the prevailing party is precluded from recovering its own postoffer costs and must pay its opponent's postoffer costs, including expert witness fees, if awarded in the court's discretion. (*Ibid.*, citing § 998, subd. (c)(1).) The purpose of the cost-shifting statute is to encourage the settlement of litigation without trial, by punishing the party who fails to accept a reasonable settlement offer from its opponent. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 152 [118 Cal.Rptr.2d 569].)

Where the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the burden lies with the offeree to show that the offer was not in fact reasonable. (*Carver v. Chevron U.S.A., Inc., supra*, 97 Cal.App.4th at p. 152.) However, in seeking to enforce an offer pursuant to section 998, the offering party bears the burden of demonstrating that the offer was otherwise valid. (*Barella, supra*, 84 Cal.App.4th at p. 799.) An offer will be strictly construed in favor of the party against whom it would operate under section 998 and although the inclusion of nonmonetary terms and conditions therein does not necessarily render an offer invalid, the offer must be unconditional to be enforceable. (*Barella, supra*, 84 Cal.App.4th at p. 799.)

### A. *Uncertainty*

In interpreting a section 998 offer, general contract principles apply when they neither conflict with nor defeat the statute's purpose of encouraging the settlement of lawsuits prior to trial. (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 278 [204 Cal.Rptr. 143, 682 P.2d 338].)   Under California law, a contract is enforceable if it is sufficiently definite that a court can ascertain the parties' obligations thereunder and determine whether those obligations have been performed or breached. (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623 [2 Cal.Rptr.2d 288].)   The issue of whether Staffpro's settlement offer was sufficiently certain to be enforceable involves a question of law, which we review de novo. (*Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 625 [132 Cal.Rptr.2d 549].)

Elite contends that the inclusion of the attorney fee provision rendered the offer too uncertain to be enforced because the provision did not specify the

amount of fees to be paid, but rather left that for future determination or agreement. However, neither law nor equity requires that every term and condition of an agreement be set forth in the contract. (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 500–501 [227 Cal.Rptr. 318].) "The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of their agreement." (*King v. Stanley* (1948) 32 Cal.2d 584, 588 [197 P.2d 321].) In the absence of express conditions, a court may look to custom and practice to determine incidental matters, so long as such matters do not alter or vary the terms of the agreement. (See *id.* at pp. 588–589.)

■ Applying the foregoing principles, we conclude that Staffpro's failure to specify a dollar amount for the attorney fees in the offer does not render the offer so uncertain as to be unenforceable. Many contracts contain a provision authorizing the prevailing party in litigation arising out of the contract to recover reasonable attorney fees from another party to the contract, yet Elite is unable to cite any published authority holding the inclusion of such a provision renders the subject contract uncertain or unenforceable. More importantly, the failure of the offer to specify the dollar amount of reasonable fees would not have precluded a court from ascertaining with reasonable certainty Staffpro's obligations thereunder if Elite had accepted the offer.

The offer provided that Staffpro would pay Elite "a sum equal to the amount of reasonable attorneys' fees and taxable costs that [Elite] has incurred in investigating and prosecuting this action to and including December 26, 2001 [the date of the offer], as it relates to [Staffpro's] alleged conduct sued upon [in this action]." If Elite had accepted the offer, section 1033.5, subdivision (c)(5) would have provided the mechanism for determining the amount of attorney fees allowable as costs. (*Ibid.* [providing that attorney fees recoverable pursuant to a contractual provision "shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties"]; see also Cal. Rules of Court, rule 870.2.)

■ Because applicable statutory and rule provisions set forth a procedure for determining the amount of attorney fees to be awarded pursuant to a contractual provision (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 618 [71 Cal.Rptr.2d 830, 951 P.2d 399]), the fact that the offer does not specify a particular amount of attorney fees does not leave the matter open for the parties' future agreement, nor does it create an uncertainty that renders it unenforceable. In this regard, a settlement offer that includes an agreement to pay reasonable attorney fees is analogous to the inclusion of an award of unspecified costs in a judgment, a very commonplace occurrence. The fact

that the amount of reasonable costs (in this case, fees) must be determined thereafter does not render the offer fatally uncertain.

Elite further objects that the offer was uncertain because it would be required to incur additional, nonrecoverable attorney fees to bring a motion to have the court determine the fee amount if the parties could not reach agreement on the matter. However, courts are frequently asked to determine the reasonableness of attorney fees and do so on the basis of declarations rather than live testimony and at hearings that are usually short in duration. (*Padilla v. McClellan* (2001) 93 Cal.App.4th 1100, 1106–1107 [113 Cal.Rptr.2d 680].) There can be no doubt that if Elite had accepted Staffpro's offer, which was made early in the case, Elite would have avoided incurring additional attorney fees necessary to complete discovery and to bring its claims to trial.

██ Elite points out that our Supreme Court has held "the legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement. [Citation.]" (*Barella, supra,* 84 Cal.App.4th at p. 799.) We agree wholeheartedly and believe our determination that a settlement offer's inclusion of a provision agreeing to pay the offeree's reasonable attorney fees does not render the offer unenforceable under section 998 is such a bright-line rule.

B. *Was the Offer More Favorable Than the Outcome at Trial?*

For the first time in its reply brief on appeal, Elite argues that the nonmonetary aspects of Staffpro's offer were not "more favorable" to Staffpro than the nonmonetary orders included in the judgment. This argument is too little, too late. (*Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 138 [123 Cal.Rptr.2d 632] [points raised for the first time in a reply brief will not be considered, unless the party shows good reason for failing to present them earlier].) Even if we were to consider Elite's argument on its merits, we would have a difficult time accepting Elite's position that, although Staffpro offered to stipulate *to the exact injunctive relief requested in Elite's complaint*, the offer was less favorable to Staffpro than the nonmonetary components of the trial court's judgment, which were more limited in scope, although more detailed in certain respects. Elite's argument does not establish a basis on which the trial court's award of fees and costs to Staffpro must be set aside. .

## DISPOSITION

The orders are affirmed. Staffpro is entitled to recover its costs on appeal.

McConnell, P. J., and Nares, J., concurred.