Filed 10/10/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VADIM GOROBETS, | B327745 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV11540) |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | |
| Defendant and Respondent. | |

    APPEAL from an amended judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

    Greines Martin Stein & Richland, Cynthia E. Tobisman, Joseph V. Bui, Laura G. Lim; Knight Law Group and Radomir Roger Kirnos; Wirtz Law Group and Richard M. Wirtz for Plaintiff and Appellant.

1

Bowman and Brooke, Brian Takahashi and Bryan A. Renyolds for Defendant and Respondent.

* * * * * *

Code of Civil Procedure section 998 is designed to "encourage both the making and the acceptance of reasonable settlement offers" prior to trial. (*Scott Co. of Cal. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1114 (*Scott*).)[1] Section 998 accomplishes its design by creating both a financial incentive to make reasonable settlement offers (chiefly, by allowing the offeror to obtain a greater share of its costs and attorney fees than it would otherwise be entitled to seek) and a financial disincentive against rejecting reasonable settlement offers (chiefly, by forfeiting the offeree's entitlement to costs and attorney fees to which it would otherwise be entitled). (§ 998, subds. (c)(1) & (d).) The disincentive function is achieved, however, only if the offer under section 998 is, among other things, "sufficiently certain" or "specific" or "definite" in its terms and conditions. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764-765 (*Fassberg*); *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268 (*Elite Show*).) This appeal presents two questions: (1) Is a 998 offer sufficiently certain if it consists of two offers made at the same time to the same party and leaves it to the offeree which offer to accept; and (2) Is a 998 offer sufficiently certain if it promises to pay the offeree for the categories of damages to which the offeree is statutorily entitled (plus some categories to which it is not), agrees to immediately pay any undisputed amounts for

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

those categories, and shunts any disputed amounts to a third-party mechanism for resolution?  We conclude that the answer to both questions is "No."  Although the offeror in this case made two simultaneous offers (which would render both of them ineffective), only one of those two offers was *itself* invalid; as a result, the offeror's 998 offer in the end consisted of a single valid offer such that the trial court's orders and resulting amended judgment were correct in limiting the offeree to pre-offer costs and attorney fees and awarding the offeror post-offer costs based on the offeree's failure to obtain a more favorable award at trial than the single, valid offer.  We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

On October 2, 2015, Vadim Gorobets (plaintiff) entered into an agreement with Jaguar Land Rover North America, LLC (Land Rover) to lease a new 2016 Land Rover LR4.  The vehicle was valued at $59,474 and plaintiff was required under the lease to pay $32,502.54 over the course of 42 monthly payments.  He had the option to purchase the vehicle at the end of the lease term for $37,300.14.

Plaintiff experienced "defects and nonconformities" with the vehicle's "steering, suspension, engine, exterior, electrical, structural, HVAC, interior and brakes."  The defects persisted after plaintiff brought the vehicle into a Land Rover dealership for repairs.

### II.  Procedural Background

#### A.  *Complaint*

Plaintiff filed suit against Land Rover on April 4, 2019 for violations of California's "lemon law," the Song-Beverly

3

Consumer Warranty Act (Civ. Code, § 1790 et seq.) (the Act).[2] He asserted three claims under the Act—namely, (1) breach of express warranty, (2) breach of implied warranty, and (3) breach of the duty to return the vehicle from service without defects within 30 days. As relief, plaintiff prayed for, among other things, replacement of the vehicle or restitution, incidental and consequential damages, civil penalties, prejudgment interest, and attorney fees and costs.

### B. *Land Rover's 998 offer*

Eighteen months after plaintiff filed suit, Land Rover served plaintiff with a purported 998 offer on October 15, 2020. The 998 offer was really *two* simultaneous offers, albeit phrased as "alternative[s]"; Land Rover invited plaintiff to choose which offer to accept:

● *A lump sum offer.* Land Rover offered to "pay $85,000.00 to [p]laintiff to return" the vehicle to Land Rover "with free and clear title."

● *A category-based offer with a dispute resolution mechanism.* Land Rover also offered to "reimburse" plaintiff for several subcategories of restitution available under the Act (namely, (1) the "past amounts" he paid for the vehicle, including "transportation" charges, "manufacturer-installed options," "loan interest," "rental charges" and "collateral charges such as sales tax, license fees, registration fees, and other official fees," and (2) any "incidental or consequential damages") as well as a category to which plaintiff was not entitled (namely, a waiver of the Act's

---

[2] Plaintiff also named the dealership where he leased the vehicle and brought it in for repairs (Terry York Motor Cars, Ltd., dba Land Rover of Encino), but subsequently dismissed that defendant.

4

mileage offset for use of the vehicle prior to bringing the defects to Land Rover's attention). Under this offer, plaintiff was required to provide Land Rover an "itemization" with "proof" of the amounts in each category: Any "undisputed" amounts would be paid immediately after plaintiff surrendered the vehicle to Land Rover, while any "disputed" amounts would be resolved by plaintiff's choice of one of several "dispute resolution process[es]"—that is, "by motion, bench trial, jury trial, expedited jury trial . . ., or by referee." Plaintiff was required to return the vehicle "with free and clear title," and Land Rover would pay off any outstanding loan balance.

As to either offer, Land Rover offered to pay plaintiff's attorney fees and costs in either (1) a flat amount of $7,500 or (2) an amount to be determined by the court. Plaintiff could "elect[]" which of these options he preferred.

Land Rover's offer ended with a box where plaintiff's counsel could "[c]hoose [o]ne" offer to accept.[3]

Plaintiff did not respond, and the offer expired.[4]

C.    *Trial*

The parties proceeded to trial in March 2022 solely on plaintiff's claim for breach of express warranty under the Act. The jury found Land Rover liable, and awarded plaintiff $76,155.27 in damages comprised of the amount plaintiff paid for

---

[3]    The offer also included various other provisions not at issue here regarding dismissal of the action and logistical steps for plaintiff to return the vehicle and for Land Rover to transmit payment.

[4]    This was Land Rover's second 998 offer. Plaintiff did not accept Land Rover's first, prior offer. Its terms are therefore not germane to this appeal.

5

the vehicle ($69,576.65), finance charges ($1,947.82), taxes and fees ($3,681.12), and incidental damages ($4,828), less the value of plaintiff's use of the vehicle during the preceding six years ($3,878.32). Because the jury found that Land Rover had not "willfully" violated the Act, the jury did not award plaintiff civil penalties.

The trial court entered judgment on the verdict and left for future litigation any award of attorney fees and costs.

### D. *Dueling motions for costs*

The parties both filed memoranda of costs and then cross-motions to strike or tax the other's recovery.

Plaintiff sought $76,118.32 in costs on the ground that he was the "undisputed 'prevailing party'" in the case.

Land Rover sought $14,612.17 in costs on the ground that plaintiff did not achieve a more favorable outcome at trial than Land Rover's 998 offer and, as a result, Land Rover was entitled to the costs it incurred *after* that offer and plaintiff was limited to the costs he incurred *prior* to that offer.

Following rounds of briefing on the cross-motions, and a hearing, the trial court ruled on November 3, 2022 that the cost-shifting provisions of section 998 applied.

The court ruled that Land Rover's 998 offer was "valid," reasoning that "[a]t the time th[at] offer was made, [p]laintiff was provided with a sufficiently specific and unconditional offer of $85,000.00, which he chose not to accept," and he subsequently failed to obtain a more favorable award. Thus, the trial court granted Land Rover's motion to tax plaintiff's costs such that plaintiff was awarded only the costs he incurred *prior to* the 998 offer—that is, $5,238.22. The court awarded Land Rover the

6

amount of costs it incurred *after* the 998 offer (less $20.40 in taxed witness fees)—that is, $14,591.77.

### E. *Motion for attorney fees*

Plaintiff also moved for $543,413.34 in attorney fees pursuant to the Act for prevailing at trial.[5] Following briefing and a hearing, the trial court ruled on February 3, 2023 that, based on the analysis in its costs ruling, section 998 barred plaintiff from recovering attorney fees he incurred *after* Land Rover's offer. The court denied as "inappropriate" plaintiff's requests for a multiplier of his attorneys' fees and awarded plaintiff $22,492 in pre-offer fees.

### F. *Appeal*

Following the entry of an amended judgment interlineating the costs and fees awards,[6] plaintiff timely filed this appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in shifting the awards of costs and reducing his attorney fees on the basis of Land Rover's 998 offer because (1) that offer was, in fact, *two* simultaneous offers that presented a "choose-your-own adventure," "moving target" rather than a valid offer, and (2) one of those offers—namely, the offer that proposed paying damages

---

[5] Plaintiff's lead counsel billed $280,882.50 in fees and requested a multiplier of 1.5, for a total of $421,323.75 in fees. Plaintiff's trial counsel billed $81,393 in fees and requested a multiplier of 1.5, for a total of $122,089.50 in fees.

[6] In the amended judgment, the trial court inverted two of the numbers in plaintiff's costs award—such that he was awarded $5,283.22 in costs rather than the $5,238.22 figure set forth in the court's costs ruling—but the parties do not challenge this $45 windfall.

in accord with various statutory categories and shunting any disputes regarding recovery of specific amounts to a third party for resolution—was *itself* invalid. These arguments require us to assess whether section 998 permits (1) simultaneous offers and (2) offers to pay unspecified amounts keyed to categories of statutorily authorized damages with any disputes regarding those amounts to be resolved through a dispute resolution mechanism. When helpful in assessing what section 998 permits, courts can look to (1) the statutory text (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 277 (*T.M. Cobb*), (2) the public policy underlying section 998 (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1021, 1026 (*Martinez*); *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 694 (*Valentino*); see generally *Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1184 [where text of statute does not speak to questions of interpretation, courts turn to "'other aids, such as the statute's purpose . . . and public policy'"]), and (3) analogous doctrines of generally applicable contract law, bearing in mind that those doctrines must yield to the specific policies underlying section 998 (*T.M. Cobb*, at pp. 279-280; *Martinez*, at p. 1020; *Arriagarazo v. BMW of North America, LLC* (2021) 64 Cal.App.5th 742, 748).

These are questions of statutory interpretation and questions involving application of the law to undisputed facts; although we ordinarily review a trial court's costs and fees awards under the Act for an abuse of discretion (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507), we review these subsidiary legal questions de novo (*Martinez, supra,* 56 Cal.4th at p. 1018; *One Star, Inc. v. STAAR Surgical Co.* (2009) 179 Cal.App.4th 1082, 1089 (*One Star*)).

# I.   Pertinent Law Governing Section 998

Section 998 is meant "to encourage the settlement of lawsuits prior to trial." (*T.M. Cobb*, *supra*, 36 Cal.3d at p. 280; *Scott*, *supra*, 20 Cal.4th at p. 1114; *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270.)  Section 998 operates by creating an exception to the general rule that the prevailing party in civil litigation is entitled to its costs.  (*Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 832 (*Covert*) ["[s]ection 998 . . . modifies the general cost recovery provisions"]; §§ 998, subd. (a), 1032, subd. (b).)  Section 998 achieves its purpose by acting as both a "carrot" and a "stick."  (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.)  Section 998 functions as a "carrot"—and thereby creates a financial incentive to make reasonable offers to settle—by entitling the party making an offer to have its post-offer costs paid by the party receiving the offer if the party making the offer obtains the same or a more favorable result at trial or upon settlement.  (§ 998, subds. (c)(1) & (d); *Bank of San Pedro*, at p. 804 [section 998 "provides a financial incentive to make reasonable settlement offers" "by awarding costs to the putative settler"]; *Martinez, supra*, 56 Cal.4th at p. 1019 [same]; *Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 390 (*Madrigal*) [applying section 998 when the parties settle], review granted, Aug. 30, 2023, S280598.)  Section 998 functions as a "stick"—and thereby creates a financial disincentive to reject reasonable offers to settle—by requiring the party who rejects an offer and does not obtain a better result at trial or upon settlement to forfeit its post-offer costs and instead pay those of the party making the offer.  (§ 998, subd. (c)(1) & (d); *Bank of San Pedro*, at p. 804 [section 998 creates a "strong financial disincentive to a party . . . who fails to achieve a better

9

result than that party could have achieved by accepting his or her opponent's settlement offer"]; *Martinez*, at p. 1019 [same]; *Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 583 (*Taing*) [section 998 "penalize[es] a party who fails to accept a reasonable offer from the other party"].) The shifting of costs contemplated by section 998 can be significant, as "costs" can include attorney fees. (§§ 998, subd. (c)(2)(B), 1033.5, subd. (a)(10)(B); e.g., *Hersey v. Vopava* (2019) 38 Cal.App.5th 792, 798-799 ["Costs include attorney fees for purposes of section 998."]; see Civ. Code, § 1794, subd. (d) [costs include attorney fees under the Act].)

In light of these significant consequences, not every offer qualifies as a *valid* 998 offer. To be valid under section 998, the offer (1) must be "sufficiently" "certain," "specific," or "definite" in its terms and conditions (*Fassberg*, *supra*, 152 Cal.App.4th at pp. 764-766 [sufficient certainty and sufficient specificity]; *Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1053 (*Markow*) [sufficient specificity]; *Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 (*Berg*); *Taing*, *supra*, 9 Cal.App.4th at p. 585 [same]; *Duff v. Jaguar Land Rover North America, LLC* (2022) 74 Cal.App.5th 491, 499 (*Duff*) [same]; *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1050 (*MacQuiddy*) [same]; *Elite Show*, *supra*, 119 Cal.App.4th at pp. 268-269 [sufficient certainty and definiteness]), (2) must be unconditional (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 (*Barella*); *Sanford v. Rasnick* (2016) 246 Cal.App.4th 1121, 1129-1130 (*Sanford*)), and (3) must be made in "good faith," which means "the offer is "'realistically reasonable under the circumstances'"" because (a) the offer was "within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known," and (b) the offeror knew "the

10

offeree had sufficient information . . . to assess whether the 'offer [was] a reasonable one'" (*Licudine v. Cedar-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924-925 (*Licudine*)).

Section 998's requirement of sufficient certainty is really *two* certainty requirements. First, an offer is certain under section 998 only if its terms and conditions are sufficiently certain that the *offeree*—at the time the offer is made—can "evaluate the worth of the offer and make a reasoned decision whether to accept th[at] offer." (*Fassberg, supra*, 152 Cal.App.4th at p. 764; *Taing, supra*, 9 Cal.App.4th at p. 585; *Markow, supra*, 3 Cal.App.5th at p. 1053; *Berg, supra*, 120 Cal.App.4th at p. 727.) Second, an offer is certain under section 998 only if its terms and conditions are sufficiently certain that the *trial court*—at the time the case is resolved—can "determine whether the judgment is more favorable than the offer." (*Fassberg*, at p. 764; *Valentino, supra*, 201 Cal.App.3d at p. 698; *Berg*, at p. 727; see *Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154, 158 (*Palmer*) ["the validity of an offer" from the court's perspective "will often be determined *only in hindsight*"], italics added.) An offer that obligates a trial court to "undertake extraordinary efforts to attempt to determine whether the judgment is more favorable" than the offer runs afoul of section 998's second certainty requirement. (*Fassberg*, at p. 766; *Valentino*, at p. 698; *Barella, supra*, 84 Cal.App.4th at pp. 800-801; cf. *Berg*, at p. 727 ["Neither the clerk nor the court is authorized to adjudicate a dispute over the terms of section 998 agreements before entering judgment."].)

The party making the 998 offer bears the burden of demonstrating that its offer was sufficiently certain and unconditional (*Taing, supra*, 9 Cal.App.4th at p. 585; *Covert*,

11

*supra*, 73 Cal.App.5th at p. 832); as to these requirements, any ambiguity in the offer is to be "strictly construed" *against* the offeror (*Barella*, *supra*, 84 Cal.App.4th at p. 799; *Berg*, *supra*, 120 Cal.App.4th at p. 727). The party receiving the offer bears the burden of demonstrating that the offer was not made in good faith. (*Licudine*, *supra*, 30 Cal.App.5th at p. 926.) We review de novo whether an offer is sufficiently certain to qualify as a valid 998 offer. (*Fassberg*, *supra*, 152 Cal.App.4th at p. 765; *Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 122 (*Chen*); *MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1049.)

Contrary to what plaintiff suggests, section 998 applies in full force even in cases brought under the Act. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 1000, superseded on other grounds by section 998; *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 726; *Madrigal*, *supra*, 90 Cal.App.5th at p. 397, fn. 8; *Covert*, *supra*, 73 Cal.App.5th at pp. 836-837.)

## II.    Are Simultaneous Offers Effective Under Section 998?

Our Supreme Court has observed that "[n]othing in the wording of section 998 prevents a [party] from making more than one compromise offer" to the same opposing party.[7] (*Martinez*,

_____

[7]    The validity of one plaintiff's simultaneous offers to multiple defendants or the validity of one defendant's simultaneous offers to multiple plaintiffs presents different questions of certainty than the scenario at issue here. (See, e.g., *Taing*, *supra*, 5 Cal.App.4th at pp. 583-584 [documenting relevant rules in this multiple-party scenario]; *Palmer*, *supra*, 108 Cal.App.4th at p. 157 [same]; see also *Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498, 506-507 [one person

12

*supra*, 56 Cal.4th at p. 1020.) Typically, litigants make multiple offers seriatim—that is, one at a time; when they do, the most recent offer is usually the operative offer that controls for purposes of evaluating whether the subsequent judgment is more or less favorable.[8] (*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 391 (*Wilson*); *One Star*, *supra*, 179 Cal.App.4th at pp. 1091-1093; *Varney Entertainment Group, Inc. v. Avon Plastics, Inc.* (2021) 61 Cal.App.5th 222, 234; *Palmer*, *supra*, 108 Cal.App.4th at p. 157.) But does section 998 allow a party to make multiple offers to the same party *at the same time*?

We hold, as a threshold matter, that Land Rover made two simultaneous offers because, as Land Rover acknowledged during oral argument, the two "options" it proposed to plaintiff were "mutually exclusive" and because characterizing them as a single offer with two "options" does not alter their operation as independent offers. We further hold, more importantly, that simultaneous offers to the same party are not effective under

---

prosecuting action in several legal capacities constitutes one plaintiff for purposes of section 998].)

8     But the last-in-time offer is not always the operative offer. If the later of two offers is withdrawn by the offeror, the prior offer becomes operative for purposes of determining whether the cost-shifting mechanism of section 998 applies. (*One Star, supra*, 179 Cal.App.4th at pp. 1093-1094.) And if a judgment is more favorable to the offeror than the multiple offers the offeree rejected, the operative offer for purposes of calculating the point at which costs shift is the first-in-time offer. (*Martinez, supra*, 56 Cal.4th at p. 1026.)

13

section 998 because such offers satisfy only one of section 998's two certainty requirements.[9]

Simultaneous offers *do* satisfy the first, offeree-focused requirement of sufficient certainty because they do not interfere with the *offeree's* ability to "evaluate the worth of the offer[s] and make a reasoned decision" about which of the simultaneous offers to accept. (*Fassberg*, *supra*, 152 Cal.App.4th at p. 764.) An offeree simultaneously presented with multiple valid offers is not automatically deprived of the ability to evaluate the worth of each offer just because the offers are served at the same time. (Accord, *Anderson v. Hilton Hotels Corp.* (Fla. 2016) 202 So.3d 846, 855 [holding that "simultaneous offers" are "'sufficiently clear and definite'" to enable offeree to decide which to accept].) This truth is illustrated by the following example. Assume an offeror makes two simultaneous offers to settle a case—one to pay a lump sum of $100,000 and another to pay a lump sum of $200,000. The offeree is certainly able at the time it receives the two offers to assess their value individually ($100,000 and $200,000, respectively) against what the offeree estimates to be

---

[9] The logic of our holding applies with equal force to all 998 offers except, perhaps, in situations where a statute explicitly authorizes simultaneous offers. For instance, the Act specifically grants a consumer the right to elect whether to accept a new vehicle manufacturer's offers either to (1) receive a "replacement" vehicle or (2) receive "restitution" upon returning the vehicle. (Civ. Code, § 1793.2, subd. (d)(2).) Whether this provision implicitly authorizes a new vehicle manufacturer to make such simultaneous offers in the first place—notwithstanding our rule barring simultaneous 998 offers—is not an issue we need to confront, as this case involves post-complaint simultaneous offers *for restitution* under the Act.

14

their potential recovery at trial. The fact that both offers are served at the same time and that the offeree has to check a box next to the offer they accept does not appreciably diminish the offeree's ability to evaluate either offer.

However, simultaneous offers do *not* satisfy the second, trial court-focused requirement of sufficient certainty because they interfere with the *trial court's* ability, at the time the case is resolved, to determine "whether the judgment is more favorable than the offer." (*Fassberg*, 152 Cal.App.4th at p. 764.) Although the text of section 998 does not address simultaneous offers beyond referring to "offer" in the singular rather than the plural (see generally, § 17, subd. (a) ["[w]ords" in statutes "us[ing]" a "singular number include[] the plural"]; cf. *Pratt & Whitney Cananda, Inc. v. Sheehan* (Alaska 1993) 852 P.2d 1173, 1182 [allowing simultaneous offers under plain language of similar rule, but not addressing court's duty to assess results]), the policies underlying section 998 counsel strongly against allowing such offers and those policies override the rules generally applicable to other contracts.

Section 998 serves several public policies. Specifically, section 998 aims to—and hence favors constructions that tend to—(1) encourage parties to make more offers that will result in settlements that compensate the injured party (*Martinez, supra*, 56 Cal.4th at pp. 1019, 1021; *Palmer, supra*, 108 Cal.App.4th at pp. 158-159; *T.M. Cobb, supra*, 36 Cal.3d at p. 281), (2) discourage offers aimed at gaming the system (*Martinez*, at p., 1021; *One Star, supra*, 179 Cal.App.4th at p. 1095), (3) increase predictability by providing litigants with "'bright line rules'" giving "clear direction" rather than rules that "spawn disputes over the operation of section 998" (*Sanford, supra*, 246

15

Cal.App.4th at pp. 1129-1130; *Palmer*, at p. 158; *Barella*, *supra*, 84 Cal.App.4th at p. 799; *Wilson*, *supra*, 72 Cal.App.4th at p. 391; *Martinez*, at p. 1021), and (4) ensure "flexibility" so parties can make new offers "when [they] discover new evidence" (*Martinez*, at p. 1021).

Recognizing simultaneous offers as being effective under section 998 would empower litigants to game the system (the second policy) through the practice of making multiple offers that cover all possible outcomes and, when all of the offers are rejected, arguing to the trial court that cost shifting under section 998 applies because the ultimate outcome of the case is better for the offeror than *at least one* of those offers. The remaining policies underlying section 998 do not dictate a different interpretation. A rule prohibiting simultaneous offers does not appreciably discourage offers (the first policy) or diminish flexibility (the fourth policy); all it does is obligate litigants to make their offers one-at-a-time instead of all at once, which they can easily do because a 998 offer can be revoked at any time before it expires (*T.M. Cobb*, *supra*, 36 Cal.3d at p. 281). A rule prohibiting simultaneous offers is also just as bright line as a rule permitting simultaneous offers (the third policy). What is more, these section-998-specific policies render any general principles of contract law largely irrelevant because courts evaluating contracts—unlike courts evaluating 998 offers—are generally not called upon to evaluate whether a *rejected* offer to form a contract is better or worse than the outcome of a case.

The uncertainty to the trial court engendered by simultaneous offers is illustrated by the example discussed above. If the offeree rejects the simultaneous offers to settle for a lump sum of $100,000 and a lump sum of $200,000, and if the

16

jury returns a verdict for the offeree of $150,000, how is the court to assess whether the offeror did better or worse than the verdict? The verdict is *between* the $100,000 and $200,000 offers, and is accordingly worse for the offeror than one offer but better than the other. Because the offers were made at the same time, a court cannot rely on the timing of the offers to dictate which is the operative one. Further, particularly Machiavellian litigants will be sure to cover the waterfront by making simultaneous offers for all possible outcomes in an attempt to ensure that at least one of those offers will trigger cost shifting under section 998.

Although simultaneous offers are not *practically* unprecedented (e.g., *Madrigal*, *supra*, 90 Cal.App.5th at pp. 391, 404-406 [detailing simultaneous offers made in that case, but not passing on their validity]; see generally, *People v. Fontenot* (2019) 8 Cal.5th 57, 73 (*Fontenot*) ["we do not treat cases as 'authority for propositions not considered'"]), we now hold that they are *legally* unprecedented and, more to the point, legally ineffective under section 998.[10]

---

[10] At oral argument, Land Rover cited *Ramos v. Mercedes Benz USA, LLC* (2020) 55 Cal.App.5th 220 as support for the notion that manufacturers sued under the Act sometimes *need* to make simultaneous offers to address the different claims asserted under the Act which have different remedies. Although *Ramos* holds that the different remedies for different violations of the Act are not interchangeable, *Ramos* is irrelevant here. *Ramos* does not deal with simultaneous offers, or for that matter, section 998. Moreover, the implicit premise of Land Rover's argument is that offerors should be permitted to make simultaneous offers on a claim-by-claim basis rather than a single offer that encompasses the settlement of an entire lawsuit; tellingly, Land Rover offers no authority in support of this sweeping proposition.

In light of our conclusion that simultaneous offers are invalid only because such offers are too uncertain for the trial court to evaluate under section 998 *on the back end*, we must proceed to examine whether each of the offers is independently valid: If each simultaneous offer is valid, then the trial court is unable to apply section 998 at the back end and, as concluded above, the offers are all ineffective; but if only one offer is independently valid, then the trial court can apply section 998 at the back end as to that offer and the prohibition against simultaneous offers is not implicated.[11]

## III. Is a 998 Offer Valid If It Lists Categories of Remedies Without Monetary Values and Refers Disputes Over Those Values to an Unknown Arbiter?

California courts uniformly hold that a 998 offer is not invalid merely because it contains nonmonetary terms and conditions; a 998 offer with such terms is valid as long as those terms and conditions satisfy the usual certainty requirement—namely, that they are "sufficiently certain and capable of valuation" (1) by the offeree when the offer is made (in order to assess the offer's worth), and (2) by the trial court after the case is resolved (in order to compare the offer's worth to the judgment). (*Fassberg*, *supra*, 152 Cal.App.4th at p. 764; *Markow*, *supra*, 3 Cal.App.5th at p. 1053; *Duff*, *supra*, 74 Cal.App.5th at p. 499; *Elite Show*, *supra*, 119 Cal.App.4th at p. 268; *Covert*, *supra*, 73 Cal.App.5th at pp. 833, 841; *Menges v. Dept. of Transportation* (2020) 59 Cal.App.5th 13, 26; *MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1050.) The question here is whether a 998 offer that

---

11    Because we view this further analysis as necessary, we disagree with the dissent that it is an "extra step." (Dis. Opn., at p. 2.)

18

promises to pay the offeree unspecified amounts corresponding to statutorily enumerated categories of damages (plus a little extra) and that kicks to a third-party arbiter any legal or factual disputes over those amounts satisfies the certainty requirements.

We hold that an offer to pay amounts to which an offeree is statutorily entitled and to shunt any disputes over entitlement to those amounts to a third-party arbiter is not sufficiently certain to be valid under section 998.

Such an offer *does* satisfy the first, offeree-focused requirement of sufficient certainty because it does not interfere with an *offeree's* ability to "evaluate the worth of the offer and make a reasoned decision" about whether to accept it. (*Fassberg*, *supra*, 152 Cal.App.4th at p. 764.) The terms and conditions of such an offer are not insufficiently certain merely because they call upon the offeree to estimate how *both* legal *and* factual disputes over damages might be resolved at trial. This is why offers promising to pay an unspecified amount of attorney fees (*Elite Show*, *supra*, 119 Cal.App.4th at pp. 266, 269), offers promising to pay an unspecified amount of costs (*id.* at p. 270), and offers requiring a release to be negotiated later (*Fassberg*, at p. 766; *Sanford*, *supra*, 246 Cal.App.4th at p. 1130; *Covert*, *supra*, 73 Cal.App.5th at p. 839 [collecting cases]) have all been upheld as valid even though each of them requires the offeree to prognosticate how various disputes will be resolved. Put simply, an offer is not uncertain merely because it calls upon the offeree to fill in the blanks and do the math.[12] Because an offer that

---

[12] However, if the offeree does not have access to the information necessary to do that math, the offer may not be in good faith. (Cf. *Licudine*, *supra*, 30 Cal.App.5th at p. 920 [offer not valid if offeror knew offeree lacked "reasonable access to the

19

promises to pay unspecified amounts corresponding to various statutory categories of damages merely calls upon the offeree to do the math, such an offer is sufficiently certain *to the offeree* deciding whether to accept that offer.

Plaintiff resists this conclusion with three arguments.

First, he suggests that only offers for a monetary sum certain are valid under section 998. As noted above, that is not the law.

Second, plaintiff urges that an offer that requires the offeree to predict how a third-party arbiter might resolve factual or legal disputes is invalid because it requires more than "simply crunch[ing] a few numbers." We reject this assertion. To begin and as discussed above, not knowing how a dispute will be resolved until subsequent litigation or negotiation occurs does not itself render the offer uncertain *from the offeree's perspective*. Time and again, courts have found 998 offers valid where certain values or terms of the offer's components are kicked to a later determination. (See, e.g., *Berg*, *supra*, 120 Cal.App.4th at p. 731 [offer presumes negotiations after acceptance; valid].) What is more and also as discussed above, in comparing a 998 offer to the potential recovery at trial, offerees are always tasked with conducting a risk assessment about how legal and factual disputes might be resolved; plaintiff cannot shirk this traditional responsibility just because an offer is stated in a nontraditional fashion or just because the responsibility turns out to be "difficult." (*Covert*, *supra*, 73 Cal.App.5th at p. 839 [dispute over prejudgment interest makes it "difficult" for offeree to "estimate"

---

facts necessary to 'intelligently evaluate the offer'"].) No such allegations were—or could be—made in this case, where plaintiff possessed all the information pertinent to the damages he sought.

trial recovery, "but no more so than" estimating damages likely to be recovered at trial; 998 offer with this term still valid].)

Third and lastly, plaintiff argues that this case is indistinguishable from *Duff, supra*, 74 Cal.App.5th 491. Plaintiff is wrong. In *Duff*, a car manufacturer (indeed, Land Rover) made an offer promising to pay the offeree a sum certain of $28,430.80 *plus* additional amounts if the offeree "provide[d] documentation [to the offeror] to show the amount [owed] is more than $28,430.80." (*Id.* at p. 496.) *Duff* ruled that this single offer was too uncertain to be valid chiefly under the first, offeree-focused certainty requirement because it presented a "moving target"—was the offer for $28,430.80 or for a greater amount?—that made it impossible *for the offeree* to value the offer at the time the offer was made. (*Id.* at p. 500.) The offer in this case is different because, unlike *Duff*'s single offer that combined a sum certain with a potential for greater recovery based on documentation, here we have *two* alternate offers—one for a sum certain and a second for statutorily enumerated amounts supported by documentation with any disputes shunted to an alternate dispute mechanism. As explained above, the offeree in this situation is able to evaluate each offer's worth independently; neither offer, *by itself*, is too uncertain *to the offeree* at the time of the offer.

However, an offer to pay statutorily enumerated categories of damages subject to proof and that shunts any legal or factual disagreements to a third-party arbiter does not satisfy the second, trial court-focused requirement of sufficient certainty because such an offer precludes a *trial court*, at the time the case is resolved, from determining "whether the judgment is more favorable than the offer." (*Fassberg, supra*, 152 Cal.App.4th at p. 764.) That is because this type of offer obligates the trial court to

21

compare (1) the amount of the judgment to (2) the total amount of (a) what the parties might have agreed was undisputed, (b) what the selected third-party arbiter might have determined as to any disputed issues, or (c) a combination of both.  Because this second amount is wholly hypothetical, the only way a trial court could conduct the comparison required by section 998 would be "'to engage in wild speculation bordering on psychic prediction.'" (*Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 297 (*Khosravan*); *Valentino*, *supra*, 201 Cal.App.3d at p. 699; see, e.g., *MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1050 [trial court cannot compare judgment to nonmonetary term in offer that is "subjective"].)  This is too uncertain to create a valid 998 offer.  What is more, a rule allowing such offers would be sure to "spawn disputes over the operation of section 998," a result at odds with its underlying public policy.  (*Martinez*, *supra*, 56 Cal.4th at p. 1021.)

Land Rover resists this conclusion with what boils down to three arguments.

First, Land Rover argues that an offer to pay unspecified amounts that track the categories of statutorily enumerated damages is sufficiently certain because all the trial court needs to do is compare which categories the jury actually awarded to the categories that were offered.  This argument ignores the terms of Land Rover's 998 offer at issue here.  The terms of that offer do *not* authorize the court to compare the amounts the jury awarded for categories it found applicable to the amounts the jury awarded for categories Land Rover offered.  (Cf., e.g., *MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1050 [suggesting that an offer with terms that are "minimally determined by" statute may be sufficiently certain].)  Rather, the terms of Land Rover's

22

998 offer only authorize the court to compare the amount of the jury's award to the amount of what the parties might have agreed upon plus what a third-party arbiter might have decided as to whatever the parties could not agree upon. Land Rover would have us equate the two, but doing so ignores that the amount the jury awarded for each category may be entirely different than what the parties might have agreed to or what a third-party arbiter might have awarded for the same category at some earlier point in the case. (Accord, *Wilson*, *supra*, 72 Cal.App.4th at p. 390 ["there is an evolutionarily aspect to lawsuits"].)

Second, Land Rover argues that its category-focused 998 offer is valid because, as we noted above, courts have upheld section 998 offers that provide for third-party arbiters to decide disputes regarding attorney fees (*Elite Show*, *supra*, 119 Cal.App.4th at pp. 266, 269) and costs (*id.*, at p. 270), and have upheld 998 offers that contemplate the future negotiation of releases that reach no further than the claims at issue in a case (*Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907; *Covert*, *supra*, 73 Cal.App.5th at p. 839; cf. *Chen*, *supra*, 164 Cal.App.4th at p. 122 [invalidating release that reaches beyond claims at issue in case]; *Valentino*, *supra*, 201 Cal.App.3d at pp. 694-697 [same]; *Khosravan*, *supra*, 66 Cal.App.5th at pp. 298-299 [same, as to invalidating release that also requires indemnification]). What these components to an offer all have in common is that they are "incidental" to the lawsuit's core. (*Elite Show*, at p. 269.) *No* case has held that a section 998 offer is valid if it leaves resolution of core components of damages to a third-party arbiter.[13] To illustrate, if an offer in a personal injury

---

[13] Although the offer discussed in *Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 970, offered to pay categories of

23

case promised to pay damages for the categories of medical expenses and pain and suffering and shunted any disagreements over the amounts for those categories to a third-party arbiter, a trial court would have no way to know what the arbiter would have awarded for the amorphous but critical category of pain and suffering damages and hence no way to compare that amount to what a jury eventually awarded. (See *People v. Gomez* (2023) 97 Cal.App.5th 111, 118-119 [noting "difficult[y]" in quantifying subjective pain and suffering damages].) Such an offer is, like the one at issue here, too uncertain to be valid under section 998. (Accord, *Sanford*, *supra*, 246 Cal.App.4th at pp. 1130-1132 [offer requiring parties to enter into a "settlement agreement" with unspecified terms is too uncertain and invalid under section 998].)

Third and lastly, Land Rover argues that this case is distinguishable from *Duff*, *supra*, 74 Cal.App.5th 491. This is true but irrelevant. *Duff* invalidated the 998 offer in that case chiefly due to its uncertainty to the offeree; here, we address the uncertainty of the 998 offer to the trial court. The two analyses are not the same.

**IV.    Applying These Rules**

Applying our analysis, one of Land Rover's two offers—namely, the offer to pay an unspecified amount corresponding to various categories of damages under the Act—is invalid. However, no one disputes that the other of Land Rover's two offers—namely, the offer to pay a sum certain of $85,000—is

---

damages that tracked the statutorily enumerated categories under the Act, *Kirzhner* at no point addresses the validity of that offer. *Kirzhner* is accordingly not authority for the proposition that such offers are valid. (*Fontenot*, *supra*, 8 Cal.5th at p. 73.)

valid. So we are faced with the following question: When an offeree makes two simultaneous offers, one of which is invalid and the other valid, is that *really* simultaneous offers that render the independently valid offer ineffective?

We conclude that the answer is no.[14]

To begin, what makes simultaneous offers ineffective is that they are too uncertain for the trial court, at the back end, to determine whether the judgment was better or worse than the multiple valid offers. Where, as here, we know at the back end that one of the two simultaneous offers is invalid, there remains a single valid offer against which the judgment can be compared.[15] The uncertainty defect is gone.

Even if we deem the making of simultaneous offers to render both offers ineffective *at the time they are made*, a court's subsequent recognition of the invalidity of one of the two offers revives the sole valid offer. Precedent confirms this analysis. In *One Star*, *supra*, 179 Cal.App.4th 1082, the court concluded that when an offeror makes two separate offers but later withdraws the second offer, the first offer—which had been superseded (and hence rendered ineffective) by the second—is deemed to be

---

14    This holding is necessarily limited to the facts of this case, where it is *the offeree* who is successful in challenging the validity of one of the simultaneous offers. We accordingly do not address the situation where *the offeror* challenges the validity of one of its own offers in order to sidestep the bar against simultaneous offers.

15    The answer would be different, however, if more than one offer remains valid, for the offeror would still have the tactical opportunity to pick which still-valid offer to use as a comparison point to the judgment.

"revived" and operative for purposes of section 998's cost-shifting mechanism. (*One Star*, at pp. 1085, 1093-1094.)  Although *One Star* does not deal with simultaneous offers, the principle of revival it espouses applies with equal force here.

In the supplemental briefing we invited from the parties on this issue and at oral argument, plaintiff urges that the ineffectiveness of simultaneous offers *at the time they were made* renders them both ineffective *forever* because (1) an independently valid 998 offer cannot be saved by severing it from the invalid offer (cf. *MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1050 [invalidity of certain terms of 998 offer invalidates entire offer]), (2) a rule declaring any sole remaining, valid offer effective would "reward" the offeror, and (3) a rule preserving the last valid offer standing will be unduly burdensome on trial courts applying section 998 because those courts will be routinely called upon to assess whether one or more offers made simultaneously are invalid.[16]  We reject these arguments.

As we have explained (and as plaintiff seems to acknowledge elsewhere in his supplemental brief), an offer with two options is ineffective because it operates as *two* simultaneous offers.  Thus, recognizing the effectiveness of the sole remaining valid offer when the other simultaneously made offer is later declared invalid does not entail any impermissible severance of the still-valid offer.

---

[16]     At oral argument, plaintiff also argued that we cannot uphold the lone-remaining, valid 998 offer because doing so would run afoul of the maxim that the terms of an offer are to be construed against the offer's drafter.  But we are not construing the terms of any offer; we are deciding the effect of the invalidity of one offer on the validity of another.

26

We also do not see how our analysis "reward[s]" offerors because the making of simultaneous offers renders all of them ineffective except in the happenstance, present here, where all but one of them are later declared invalid. An offeror in this situation is in the same position as an offeror who made a single, valid offer in the first place. We see no advantage, and hence no reward.

We disagree that our decision to enforce the only 998 offer that remains valid will lead to an avalanche of work for trial courts by obligating them to routinely decide whether one or more simultaneous offers are invalid. The issue arose here because this is the first case to squarely confront the validity of simultaneous offers *and* category-based offers. Given that litigants now know that simultaneous offers are generally invalid and that category-based offers are invalid, and given that we have no reason to believe that offerors are on the cusp of inventing a whole new slew of creatively phrased offers of questionable validity under section 998, we conclude that plaintiff's concern is unwarranted.

Finally, we do not agree with the dissent that the result we reach is an inequitable one. Plaintiff elected to attack Land Rover's offers on two grounds—that simultaneous offers are invalid *and* that offers keyed to statutory categories of damages are invalid. All we have done is evaluated the merit of those attacks and applied them to the facts of this case. That is how litigation unfurls. Although plaintiff may not have anticipated that the repercussion of succeeding on both of its arguments would lead to a result not in its favor, that does not render that result inequitable or unfair.

*     *     *

27

Thus, although Land Rover's simultaneous offers were not permitted by section 998, only the category-based offer fails the requirement of sufficient certainty from the perspective of the trial court and, therefore, only that offer is independently invalid. Taking that invalid offer off the table, there are no longer simultaneous offers and, accordingly, Land Rover's valid, lump sum offer to repurchase plaintiff's vehicle for $85,000 is the operative offer. Because plaintiff failed to obtain a more favorable judgment than that offer at trial, the trial court was correct in ruling, pursuant to section 998, that plaintiff is limited to recovering his pre-offer costs and attorney fees and is required to pay Land Rover's post-offer costs.

## DISPOSITION

The amended judgment is affirmed. The parties are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT


I concur:



_____, J.
 CHAVEZ

*Vadim Gorobets v. Jaguar Land Rover North America, LLC*, B327745

ASHMANN-GERST, Acting P. J., Dissenting

I agree with my colleagues that a Code of Civil Procedure section 998[1] offer is not "sufficiently certain if it consists of two offers made at the same time to the same party and leaves it to the offeree which offer to accept." (Maj. Opn., at p. 2; see also Maj. Opn., at pp. 13–14 ["simultaneous offers to the same party are not effective under section 998 because such offers" are uncertain], 17 [simultaneous offers are "legally ineffective under section 998"].) However, I respectfully disagree with my colleagues' conclusions that (1) "[s]imultaneous offers . . . satisfy the first, offeree-focused requirement of sufficient certainty because they do not interfere with the *offeree's* ability to 'evaluate the worth of the offer[s] and make a reasoned decision' about which of the simultaneous offers to accept" (Maj. Opn., at p. 14); and (2) when an offeror "makes two simultaneous offers, one of which [later turns out to be] invalid and the other valid," the offeror has not "*really* [made] simultaneous offers that render the independently valid offer ineffective" (Maj. Opn., at p. 25). In my opinion, defendant Jaguar Land Rover North America, LLC's (Land Rover) simultaneous offers to plaintiff Vadim Gorobets were ineffective under section 998. (Maj. Opn., at p. 14.) My analysis would end there, and I would reverse the trial court order awarding postoffer costs to Land Rover.

---

1     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

I see no need to take the extra step to address whether one of the simultaneous offers was ineffective.  Rather, in my opinion, the simultaneous offers by Land Rover (one offeror) to plaintiff (one offeree) were inherently ineffective under section 998.  When viewed together, which is how they were presented to plaintiff, Land Rover's simultaneous offers were not sufficiently certain for plaintiff to evaluate.  (Maj. Opn., at p. 16.)  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 ["An offer to compromise under Code of Civil Procedure section 998 must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer.  [Citations.]"].)

I do not find *One Star, Inc. v. STAAR Surgical Co.* (2009) 179 Cal.App.4th 1082 (*STAAR*) instructive.  In that case, the court held that when an offeror makes serial settlement offers, the offeror's withdrawal of the second settlement offer revives its first settlement offer; such a holding was consistent with the policies underlying section 998.  (*STAAR, supra,* at pp. 1094–1095.)

But serial offers are far different than simultaneous offers by one offeror to one offeree (*Anderson v. Hilton Hotels Corp.* (Fla. 2016) 202 So.3d 846, 854 ["an offer by a single named offeror to a single offeree was considered sufficiently clear and enforceable, although it did not address separate pending claims of other parties to the litigation"], 855 [holding that "[i]f a party receives two simultaneous offers from two separate parties, common sense dictates that the offeree should possess all the information necessary to determine whether to settle with one or both of the offerors," but not considering simultaneous offers by one party to one party]), and the policies highlighted in *STAAR* are not

2

achieved when a valid offer, which is part and parcel of a prohibited simultaneous offer, is resuscitated after judgment, when a court determines that one of the simultaneous offers was actually invalid. (See *STAAR*, *supra*, 179 Cal.App.4th at p. 1095 ["While an offer's validity may be clear only in hindsight, the status of a withdrawn offer is known to both parties as soon as the offer is withdrawn"].) Unlike the offeree in *STAAR*, plaintiff here did not know the status of the two simultaneous offers until after judgment. Even with the benefit of now knowing that simultaneous offers are banned, plaintiff could not have known that the majority would not employ the general prohibition against simultaneous offers in this case.

Furthermore, as the majority recognizes, enforcing the bright line ban on simultaneous offers would "obligate litigants to make their offers one-at-a-time instead of all at once." (Maj. Opn., at p. 16.) Allowing Land Rover to benefit here defeats this purpose.

Finally, I find the result inequitable; plaintiff should not be forced to absorb Land Rover's postoffer costs as a repercussion of our determination over four years after the offers were made that one of those offers was invalid. (See, e.g., *Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154, 158 [consequences of an invalid, or arguably invalid, offer should be placed on the offeror who caused the invalidity, not the offeree]; *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1270 ["[E]quitable estoppel is not a punitive notion, but rather a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity. It stems from the venerable judicial prerogative to redress unfairness in the application of

otherwise inflexible legal dogma, based on sound public policy and equity"].)

I would reverse the trial court's order.


_____, Acting P. J.
ASHMANN-GERST

4